# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

| | |
|---|---|
| **STEPHEN M. MCGILL** | **CIVIL ACTION NO. 15-1681-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **PARISH OF CADDO, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

This matter has been referred to the undersigned magistrate judge for review, report and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Stephen M. McGill ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on May 5, 2015. Plaintiff is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. He claims his civil rights were violated by prison officials while incarcerated at the Caddo Correctional Center in Shreveport, Louisiana, and during his criminal trial proceedings. He names the Parish of Caddo, the Caddo Correctional Center, Cole Flournoy, Lori Griffin, Robert B. Wyche, Steve Prator, Brady D. O'Callaghan, Jason Brown, Officer Tilmon, and Detective Tyler as defendants.

Plaintiff claims that in March of 2014, the booking officer placed him in the mental health unit pursuant to Lori Griffin's orders because he appeared withdrawn. He claims Griffin never interviewed him. He claims he was just tired because he had been in booking for hours. He claims that on March 27, 2014, he was again placed in the mental health unit for no reason. Plaintiff claims Cole Flournoy placed him in the mental health unit because a student worker made claims of a family member's attempted suicide 40 years earlier. He claims Cole Flournoy admitted that he never said he would harm himself and released him after two weeks.

Plaintiff claims he was placed in a one-man cell with two other inmates. He claims this was a fire hazard. He claims he was only allowed out of his cell for one hour a day. He claims he slept on a filthy mat on the floor. He claims he did not have soap, a toothbrush, or a drinking cup.

Plaintiff claims that for two weeks, he requested to speak to Cole Flournoy or Lori Griffin. He claims his requests to speak to a mental health worker were ignored and he received no treatment. Plaintiff claims that he is a long term mental health patient who cannot receive treatment or be placed on medication. He admits that he did stop taking his medicine, but claims that he wanted to continue his medication. He claims he requested to speak to a doctor numerous times, but his requests were ignored. Plaintiff claims that in order to receive treatment for his mental disorder, he was tortured in a cell for 23 hours a day. He claims his health suffered.

Plaintiff claims Commander Wyche was aware of his illegal treatment, but sent a letter to DOC Col. Tommy Miller which made excuses for his treatment.

Plaintiff claims that on December 8, 2014, he appeared in court pro se.  He claims Judge O'Callaghan stated that he would contact the jail and request that he be allowed time in the law library at least once a week.  Plaintiff claims he was denied adequate time in the law library.  He claims he was only allowed 30 minutes a month in the law library.  He claims all his requests were ignored.  He claims Commander Wyche denied that Judge O'Callaghan had contacted the jail regarding his time in the law library.  He claims his lack of time in the law library caused him problems when he has appeared in court for his pending criminal trial.

Plaintiff claims the judge refused to appoint a lawyer to help him with his case.  He claims lawyer Jim Andes was appointed as standby counsel.  He claims he has filed many disciplinary reports against Jim Andes.

Plaintiff claims Judge Brady O'Callaghan denied his motion to suppress.  He claims the arresting officer lied under oath about taking pictures and taking objects out of his house.  He claims Judge O'Callaghan did not find that the officer's testimony was false.  He claims Judge O'Callaghan allowed the victim to testify after she informed the court that she had brain damage from a stroke.  He claims the victim testified differently from her recorded statement.  He claims Judge O'Callaghan did not order ADA Brown to supply medical reports regarding the victim's injuries.  He claims Commander Wyche claims Judge O'Callaghan never contacted the jail regarding granting him access to the

law library.  He claims Judge O'Callaghan set his bail at an excessive rate.  He also claims Judge O'Callaghan denied him a speedy trial.  Plaintiff claims ADA Jason Brown failed to inform the officer about the perjury laws.  He claims not all interviews were included in the discovery.

Accordingly, Plaintiff seeks treatment a LSU Medical Center by a doctor, damages, a change in CCC policy, and termination of employees who denied him access to the law library.

## LAW AND ANALYSIS

### Classification

Plaintiff claims that in March of 2014, he was twice placed in the mental health unit for no good reason.  These are not claims that this court can resolve.  Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds).  Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910

F.2d at 1250 (quoting <u>Wilkerson v. Maggio</u>, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." <u>Luken v. Scott</u>, 71 F.3d 192, 193 (5th Cir. 1995) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)). Thus, the prison officials' decision to place Plaintiff in the mental health unit and the resulting consequences of such decision do not give rise to constitutionally protected liberty interests.  Plaintiff's claims with respect to his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

Furthermore, Plaintiff's claims have prescribed.  In <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), the Court articulated the guidelines to be used in determining what prescriptive period should apply to Section 1983 claims.  The Court determined "§ 1983 claims are best characterized as personal injury actions" and the forum state's statute of limitations applicable to such claims should be used.  <u>Id</u>. at 280.  In <u>Gates v. Spinks</u>, 771 F.2d 916 (5th Cir. 1985), the Fifth Circuit Court of Appeals phrased the test as:  "The state statute governing the general tort remedy for personal injuries should apply to 1983 actions . . ." <u>Gates</u>, 771 F.2d at 919.

The Louisiana Civil Code provides a general prescriptive statute that governs tort actions.  The article subjects delictual actions to a liberative prescription of one year.

See La. C.C. art. 3492. The Fifth Circuit qualified this prescriptive period, however, when it held that "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." Watts v. Graves, 720 F.2d 1416, 1417 (5th Cir. 1983). Finally, prescription on the claim is tolled while the administrative remedy procedure is pending. See Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

Plaintiff claims that in March of 2014, he was placed in the mental health unit. Thus, prescription began to run as to these claims in March of 2014 at the latest, when he was placed in the mental health unit. The above entitled and numbered complaint was not filed by the Clerk of Court until May 5, 2015. Plaintiff's claims are therefore prescribed and should be dismissed with prejudice.

**Conditions of Confinement**

It should first be noted that Section 1983 does not establish substantive rights, but only provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999). Because Plaintiff was a pre-trial detainee and not a convicted prisoner at the time of the complained of conditions of confinement, the Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable. Edwards v. Johnson, 98-30972, p.4 (5th Cir. 2000) (2000WL373976), citing, Ortega v. Rowe, 796 F.2d 765, 767 (5th Cir. 1986), cert. denied, 481 U.S. 1013, 107 S.Ct. 1887 (1987). A pre-trial detainee's constitutional claims are considered under the Fourteenth Amendment due process clause rather than

the Eighth Amendment.  Id.

In evaluating such constitutional claims, the court must first classify them as in Olabisiomotosho, 185 F.3d 521 (5th Cir. 1999), where the Fifth Circuit established a format for the proper analysis applicable to constitutional challenges by pre-trial detainees:

> We begin by deciding whether to classify the "challenge as an attack on a 'conditions of confinement' or as an 'episodic act or omission.'  The former category would include such claims as "where a detainee complains of the number of bunks in a cell or his television or mail privileges."  The latter category, on the other hand, occurs "where the complained-of harm is a particular act or omission of one or more officials."

Olabisiomotosho, Id. (citations omitted).

Plaintiff's claims should be classified as an attack on his conditions of his confinement.  With respect to the claims falling into the category of "conditions of confinement," the pre-trial detainee is not permitted to be punished.  Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979).  The proper inquiry is whether the complained-of conditions amount to punishment of the detainee.  Id.  A pre-trial detainee's due process rights are said to be "at least as great as the Eighth Amendment protections available to a convicted prisoner."  Hare, 74 F.3d, at 639 (5th Cir. 1996), quoting, Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983 (1983).  "[A] pre-trial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose."  Hare, 74 F. 3d, at 640.

In analyzing Plaintiff's allegations regarding the conditions of confinement, the proper inquiry is whether these allegations involve conditions amounting to punishment of the detainee. Bell, 441 U.S. at 535. To determine whether a condition of pretrial detention amounts to punishment, the court must decide whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate governmental purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538. However, for all detainees, "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned." Bell v. Wolfish, 441 U.S. at 539 n. 21, 99 S.Ct. at 1874 n. 21, quoting Ingraham v. Wright, 430 U.S. at 674, 97 S.Ct. at 1414). "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones." Harper v.  Showers, 174 F.3d 716, 719 (5th Cir. 1999), quoting, Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.  1995).

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released." Bell, 99 S.Ct. at 1875. Courts need not "detail the precise extent of the legitimate governmental interests," however, "the effective management of the detention facility . . . is a valid objective that may justify imposition of conditions and restrictions of detention and dispel any inference that such restrictions are intended as punishment." Id. In summary, under this standard, Plaintiff's complaint must demonstrate some intent to punish by the defendants to support a  constitutional claim.

Plaintiff claims that while housed on the mental health unit, he was placed in a one-man cell with two other inmates.  He claims this created a fire hazard.  He claims he slept on a filthy mat on the floor.  He claims he did not have soap, a toothbrush, or a drinking cup.

Detainees are likely to be required to share toilets, sinks and tables as a result of being detained, an inconvenience which falls into the de minimus category of imposition with which the Constitution is not concerned.'"  Bell, 441 U.S. at 535; Ingraham, 430 U.S. at 674.  Once again, "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones."  Harper v.  Showers, 174 F.3d 716, 719 (5th Cir. 1999), quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.  1995).

Plaintiff also does not allege an intent on the part of the named defendants to punish pre-trial detainees by overcrowding living quarters or the deprivation of soap, a toothbrush, and a drinking cup.  The living arrangements described do not appear to be conditions amounting to punishment of the detainee.  Plaintiff does not allege that he has suffered any injury more that a de minimus one as a result of the cell size or capacity and lack of soap, a toothbrush, or a drinking cup for two weeks.  Finding this complaint to be one regarding comfort level, it appears Plaintiff has not alleged a constitutional violation.

Furthermore, these claims have prescribed for the same reasons that his classification claims have prescribed.

Accordingly, Plaintiff's conditions of confinement claims lack an arguable basis

in fact and law and should be dismissed with prejudice as frivolous.

**Denial of Medical Treatment**

Plaintiff claims that for two weeks his claims to speak to a mental health worker were ignored and he received no treatment.  He also claims his requests to speak to a doctor were ignored.  He admits that he stopped taking his medication, but claims he wanted to continue his medication. As stated earlier, Plaintiff was a pre-trial detainee at the time of these alleged violations.

The standard to apply in analyzing a denial of medical care or inadequate medical care claim asserted by a pre-trial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997), quoting Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir. 1996).  In Nerren v. Livingston Police Dept., 86 F.3d 469 (5th Cir. 1996), the Fifth Circuit classified a case involving the alleged denial of adequate medical care to an arrestee as an episodic case.  In that case, the Court applied a deliberate indifference standard stating, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights."  The Court then defined subjective deliberate indifference as "subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." Nerren, 86 F.3d at 473.  This is the

same standard applicable to convicted prisoners,[1] that is, the alleged acts or omissions must be "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, Plaintiff must allege and be able to prove that each named Defendant has been deliberately indifferent to his serious medical needs or the claim is subject to dismissal as frivolous. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as used in the criminal law. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997). Also, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

---

[1]The Eighth Amendment applies to convicted prisoners. There are two requirements that must be met to show that a prison official has violated the Eighth Amendment. The first is an objective requirement that the inmate allege a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811, 823 (1994). Second, only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. A prison official must have a sufficiently culpable state of mind, defined as deliberate indifference or knowing disregard of an excessive risk to inmate health or safety. Farmer, 128 L.Ed.2d at 825; Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). Under this standard, a lack of proper inmate medical care can be cruel and unusual punishment only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976).

The record does not contain facts or allegations which sufficiently show that the named Defendants have been deliberately indifferent to any serious medical needs of Plaintiff.  As discussed above, a constitutional violation requires a sufficiently serious deprivation and deliberate indifference on the part of the defendant prison official.  Farmer, supra. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.  It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.  Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997);  Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

Plaintiff admits that he was housed in the mental health unit on at least two occasions.  He claims he should have been allowed to speak to a mental health worker or a doctor.  However, Plaintiff complained about the conditions of the mental health unit when he was confined there.  As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort.  However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of the Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-

30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods,

848 F.2d 649, 651 (5th Cir. 1988).

Accordingly, these claims regarding the denial of medical care and inadequate

medical care should be dismissed with prejudice as frivolous.

**Legal Access**

Plaintiff claims he was denied adequate time in the law library.  He claims he was

appearing pro se in his state court criminal proceedings and his lack of time in the law

library caused him problems.

Prisoners  have a constitutional right of meaningful access to the courts. Degrate v.

Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828,

97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).  However, this constitutional guarantee is not

without limitation.  Lewis v. Casey, 518 U.S. 343 (1996)  (quoting Turner v. Safley, 482

U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).  In Lewis v. Casey, 518 U.S.

343, (1996), the Supreme Court reviewed its holding in Bounds v. Smith, 430 U.S. 817,

(1977) which  is the source of a prisoner's constitutional right to "meaningful access to the

courts."  While the Supreme Court reaffirmed a prisoner's right of access to the courts in

Lewis, the Court limited the parameters of Bounds and set forth a standard to be applied

when determining whether to grant relief for an access to the courts violation.  In so

holding, the Court noted that a prisoner must show an actual injury, explaining that this

requirement is derived from the doctrine of standing.  Lewis, 116 S.Ct. at 2179.  The Court

used the analogy of a prisoner who is denied access to that of a healthy prisoner who has

been deprived of medical treatment.  In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983.  The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct.  Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claims are frivolous.  Clearly, Plaintiff has not satisfied the "actual injury" requirement.  Plaintiff has failed to demonstrate that he lost the right to commence, prosecute or appeal any suit as a result of the alleged denial of access to a law library.  He claims only that it caused him problems when he appeared in court for his pending criminal trial.  Plaintiff admits he had standby counsel.  Plaintiff's complaint in this court reveals on its face that he was able to clearly present his claims to this court.  Thus, he has failed to state any actual injury.  Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Judge Brady O'Callaghan**

Plaintiff claims Judge O'Callaghan appointed Jim Andes to represent him.  He claims he has filed many disciplinary reports against Jim Andes.  He claims Judge O'Callaghan denied his motion to suppress.  He claims Judge O'Callaghan failed to find

that the arresting officer's testimony was false.  He claims Judge O'Callaghan allowed the

victim to testify.  He claims Judge O'Callaghan did not order ADA Brown to supply

medical reports.  He claims Judge O'Callaghan did not contact the jail regarding his time

in the law library.  He claims Judge O'Callaghan set an excessive bail and denied him a

speedy trial.

Plaintiff cannot allege claims against Judge O'Callaghan.  It is well established that

judges enjoy absolute immunity from liability for damages arising out of performance of

their judicial duties, regardless of bad faith.  Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213

(1967); Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099 (1978).  Acts are judicial in

nature if they are (1) normal judicial functions (2) that occurred in the judge's court or

chambers and (3) were centered around a case pending before a judge.  Brewster v.

Blackwell, 692 F.2d 387, 396-97 (5th Cir. 1982).  The conduct challenged by Plaintiff

unequivocally falls within the judge's authority as judicial officer of the court and in the

ordinary exercise of judicial duties.  Accordingly, Plaintiff's civil rights claim against

Judge O'Callaghan should be dismissed as frivolous.

**Assistant District Attorney Jason Brown**

Plaintiff claims ADA Jason Brown failed to inform the officer about the perjury

laws.  He claims not all interviews were included in the discovery.  Prosecutors have

absolute immunity when acting in a quasi-judicial mode.  Imbler v. Pachtman, 424 U.S.

409, 106 S.Ct. 984, 47 L.Ed.2d 128 (1976); Geter v. Fortenberry, 849 F.2d 1550 (5th Cir.

1988).  The Fifth Circuit has repeatedly recognized the purpose of the immunity defense

is to protect public officials from undue interference with their duties and from disabling threats of liability.  Geter, 849 F.2d at 1552.  Absolute immunity is immunity from suit rather than from liability.  Elliot v. Perez, 751 F.2d 1472 (5th Cir. 1985).  The Fifth Circuit "has likewise accepted the premise that the protected official should be sheltered from trial and pre-trial preparation as well as liability." Id. at 1478.

The conduct challenged unequivocally falls within the authority of  Assistant District Attorney Jason Brown as a quasi-judicial officer of the court and in the ordinary exercise of his quasi-judicial duties.  Accordingly, Plaintiff's civil rights complaint against Assistant District Attorney Jason Brown should be dismissed as frivolous.

**False Testimony**

Plaintiff claims that during his suppression hearing, the arresting officer lied under oath about taking pictures and taking objects out of his house.  Plaintiff fails to state a claim because officers have absolute immunity from § 1983 claims relating to their testimony at adversarial pre-trial suppressions hearings.  Moore v. McDonald, 30 F.3d 616, 619 (5th Cir.1994).  Accordingly, Plaintiff's claims regarding false testimony should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter,

766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 1st

day of August, 2016.

Mark L. Hornsby
U.S. Magistrate Judge